**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **LISA NEWMAN, individually, and as the wrongful death beneficiary of ELIJAH NEWMAN, deceased,** | |
| **Plaintiff,** | **Case No.: 4:23-cv-00853-MAL** |
| **vs.** | **JURY DEMANDED** |
| **LYFT, INC.,** | |
| **Defendant.** | |

## PLAINTIFF'S MOTION FOR SANCTIONS

**COMES NOW**, Plaintiff, **Lisa Newman**, individually and as the wrongful death beneficiary of Elijah Newman, deceased ("Plaintiff"), by and through undersigned counsel, and respectfully moves this Court pursuant to the Federal Rules of Civil Procedure 16(f), 26(g), and 37(a) and (b), and the Court's inherent authority, for an Order enforcing the Court's July 22–23, 2026 discovery instructions, requiring date-certain corrective compliance, awarding Plaintiff the reasonable expenses and attorney's fees caused by Lyft's noncompliance, and reserving escalating sanctions if Lyft again fails to comply.

The present record supports targeted, curative sanctions rather than immediate case-dispositive relief. Plaintiff therefore requests an order that: (1) specifies Lyft's remaining obligations; (2) requires complete, verified supplemental responses and production by a short date certain; (3) prohibits nonprivileged confidentiality redactions; (4) requires an incident-level identification and redaction log for similar incidents; (5) requires a sworn compliance certification;

(6) awards fees and costs; and (7) warns that continued noncompliance may result in evidentiary sanctions, issue preclusion, or other relief authorized by Rule 37(b)(2)(A).

## I. INTRODUCTION

Cognizable prejudice against Plaintiff begins with being forced to "hound" Lyft for discovery the Court ordered. The Eastern District of Missouri recognizes that this diversion from merits preparation is itself prejudice. A.O.A. v. Rennert, No. 4:11 CV 44 CDP, 2018 WL 1251827, at *3 (E.D. Mo. Mar. 12, 2018). By June 16, Plaintiff filed a motion documenting 27 separate discovery-resolution efforts and certified that the June 12 conference was the ninth meet-and-confer following the May 22 deficiency letter. **(D.E. 103 – Plaintiff's Motion Requesting Telephone Conference on Short Notice)** The chronology continued through deficiency letters, depositions, a Court conference, written narrowing, an hour-long conference, joint-motion drafts, renewed conference requests, and narrowed RFP materials.

Cognizable prejudice against Plaintiff has imposed substantial expert and scheduling costs. On May 8, Plaintiff disclosed four retained experts whose work depends on Lyft's matching, safety, verification, fraud-risk, account-linkage, and similar-incident discovery. Dr. Lindsey Cameron and Joseph Steinberg each bill $850 per hour, and Annmarie Corrigan bills $750 per hour; each reserved supplementation because documents and data remained unavailable. Plaintiff has incurred more than $50,000 in expert-retention and production expenses while those experts work from an incomplete record controlled by Lyft.

Cognizable prejudice against Plaintiff has delayed justice in a case arising from a death more than five years ago and pending on the federal docket for more than three years. The June 23 Amended Case Management Order set fact discovery for August 21, expert depositions for September 4, all discovery for October 30, dispositive motions for November 6, and trial for June

14, 2027. **(D.E. 104)**. After the July conferences, the Court extended fact discovery until September 30 and vacated expert disclosure and deposition deadlines because ordered discovery remained outstanding. Lyft's noncompliance has therefore consumed the schedule, forced costly expert work on an incomplete record, and postponed merits preparation.

Cognizable prejudice against Plaintiff now arises from Lyft's claimed lack of clarity about instructions the Court stated plainly. Lyft has required repeated directions concerning production deadlines, the July 29 evaluation-and-position obligation, and the rule against using confidentiality as a substitute for privilege or protective-order treatment. The Court gave Lyft five days, ordered its position by July 29, and required an explanation for any objection; Lyft did none of those things. **(See Status Conference Transcripts at D.E. 113 and D.E. 114)**. Its later demand that Plaintiff identify the deadline is facially disingenuous, unsupported by the transcript, and a mischaracterization of the Court's instruction.

If Rule 37 sanctions are warranted when repeated delay forces a party to hound its opponent instead of preparing the merits, sanctions are warranted here. Without meaningful relief, Lyft's noncompliance will have accomplished exactly what the discovery rules forbid: transferring to Plaintiff the cost of Lyft's delay, consuming the schedule, impairing expert and deposition preparation, and withholding the evidence needed to test Lyft's notice of prior rider-on-driver violence.

Plaintiff therefore moves under Rule 37(a) and (b) and the Court's inherent authority for targeted relief: enforcement of the July 22–23 instructions **(D.E. 113 and D.E. 114)**, a four-day compliance deadline, production of the unredacted Missouri/Illinois Zendesk-based incident records, resolution of the reserved redaction dispute, sworn compliance certifications, and reimbursement of the expenses and attorney's fees Lyft's conduct caused. (Plaintiff presently seeks

corrective and monetary relief—not default or an adverse inference—but asks the Court to warn that continued disobedience will result in escalating sanctions.

## I. THE COURT'S INSTRUCTIONS AND LYFT'S NONCOMPLIANCE

At the July 22–23 conferences, the Court narrowed the disputed discovery and ordered Lyft to produce regional rider-on-driver carjacking information for January 1, 2018 through April 30, 2022. The Court extended fact discovery to September 30, 2026 so Plaintiff could complete discovery on the merits. **(D.E. 115)**.

For Interrogatory No. 3, the Court narrowed the request to drivers who transported riders between the 1200 block of Peggy Court and locations within the surrounding ten-mile radius. The Court gave Lyft five days to evaluate whether it could obtain that information, directed Lyft to advise Plaintiff **by July 29**, and required Lyft to explain any objection so the parties could promptly submit a joint motion. **(D.E. 113, July 22 Tr. pp. 25:1–31:3)**.

Lyft stated it could and would obtain the information but continues to articulate the recycled burdensome objection 20 days after the July 29 deadline. **(D.E. 113, July 22 Tr. pp 31-32)**. Although Lyft previously demanded that Plaintiff identify the deadline, Lyft's current position is facially disingenuous and mischaracterizes the transcript. The Court expressly stated the task, the five-day period, the July 29 date, and what Lyft must provide if objecting. **(DE 113, July 22 Tr. pp. 25:1–31:3)**. Plaintiff does not claim completed production was due July 29; Lyft attacks a deadline Plaintiff does not assert while avoiding the evaluation-and-position deadline the Court imposed.

Lyft's continued withholding also blocks Plaintiff from identifying witnesses, testing notice, preparing depositions, and evaluating Lyft's response to prior rider-on-driver violence. Plaintiff therefore seeks a four-day compliance deadline, verified responses, event-specific

searches and production, tailored privacy protections, fees, and a compliance certification—not default or an adverse inference at this stage.

## II. LEGAL STANDARD

Rule 37(b)(2) authorizes just sanctions when a party disobeys a discovery order. Rule 37(b)(2)(C) requires payment of the reasonable expenses caused by the failure unless it was substantially justified or an award would be unjust. An evasive or incomplete answer is treated as a failure to answer. Fed. R. Civ. P. 37(a)(4).

Fees and corrective relief are appropriate here. Case-ending sanctions ordinarily require willfulness, prejudice, and consideration of lesser measures. Plaintiff reserves those remedies if Lyft disobeys the enforcement order.

## III. FACTUAL HISTORY

1. Plaintiff served the discovery in 2024. Lyft piecemealed responses and supplements on starting in 2026.

2. At the July 22 conference, the Court granted narrowed Missouri/Illinois rider-on-driver carjacking discovery, including Interrogatory No. 9 and RFP Nos. 5 and 19, for January 1, 2018 through April 30, 2022.

3. The Court narrowed Interrogatory No. 3 and ordered Lyft to provide its evaluation and position by July 29. **(D.E. 113, July 22 Tr. pp. 25:1–31:3)**.

4. Plaintiff requested compliance and asked when Lyft would produce the Torres, Officer Hayes, Blagoue, and other Missouri/Illinois Zendesk-based incident reports. Plaintiff noted that Lyft could have produced these reports months earlier because these reports directly contradict Lyft's 12b dismissal arguments in **D.E. 75**.

5. Rather than comply, Lyft redacted the Zendesk-based incident reports-in direct opposition to the Court's guidance, failed to produce the Officer Hayes incident report (which was part of the redacted Torres report), demanded that Plaintiff identify which Lyft production documents had been provided to which members of Plaintiff's legal team, demanded a written explanation of its "continued non-compliance," asserted that Plaintiff had not identified an amended-answer deadline, and pivoted to Plaintiff's deposition, interrogatory verifications, and document production. Those collateral issues neither answer nor excuse the violations. The Court required an evaluation and position by July 29, not the amended-answer deadline Lyft attacks. Lyft's reframing mischaracterizes Plaintiff's position and the Court's instruction.

6. The parties conferred on August 7, 2026. Lyft then proposed a further conference for Tuesday, August 18, 2026, at 11:30 a.m., addressing legal-team production access, Interrogatory No. 3 compliance, Zendesk redactions, Plaintiff's deposition, and discovery verifications. Plaintiff confirmed the conference and preserved its position that separate discovery complaints do not suspend compliance with **D.E. 115**.

## IV. ARGUMENT

### A. Lyft Violated the July 29 Evaluation-and-Position Deadline, Offers Illusory Promises of Compliance as the Cure.

The Court held Interrogatory No. 3 in abeyance only to permit Lyft to evaluate the narrowed request and ***report*** whether it could obtain the information. Lyft was required to state its **new** reason if objecting so Plaintiff could prepare a prompt joint motion. It did none of those things by July 29.

Lyft's missed the deadline. Lyft later professed uncertainty about the deadline, asking for transcript cites. Weeks later, Lyft said it could obtain the information, but it is a complex exercise. Lyft's responses are disingenuous. The Court supplied the date, task, and objection procedure in

consecutive instructions. Lyft's substitution of an alleged "amended answer" deadline mischaracterizes Plaintiff's position and avoids the actual question: did Lyft timely perform and communicate the evaluation? It did not.

The Court should order a verified response stating: (1) when Lyft can identify MO/IL responsive trips and drivers; (2) the systems, date range, and geographic parameters searched; (3) the result; and (4) any specific objection. If Lyft claims the information cannot be obtained, a knowledgeable corporate representative should explain the inquiry under oath.

**B. Lyft Must Produce the Unredacted Missouri and Illinois Rider-to-Driver Violence Zendesk Incident Reports by a Date Certain.**

The Court ordered Lyft to identify Missouri and Illinois drivers subjected to rider-on-driver carjackings and to produce corresponding reports and investigations. For RFP Nos. 28–29, the Court ordered reports and investigations of specified violent crimes committed by riders against drivers during the same period. **(D.E. 113, July 22 Tr. pp. 47–49)**. Lyft produced 8 **redacted** Zendesk and Trust & Safety incident reports on August 14. As discussed in the August 18, 2026, police officer names

The Torres, Hayes, and Blagoue records are named, noticed, and corroborating events within those categories. Lyft has not stated whether it searched Zendesk and Trust & Safety repositories, when it will produce the records, or why the reports could not have been generated earlier. The August 14 production consists of **#159961501_.pdf**, **#159961501.pdf**, **#171960261.pdf**, **#172974930.pdf**, **#173384276.pdf**, **#174009233.pdf**, **#176418033.pdf**, **#176818835.pdf**, and **#176923469.pdf**.[1] These tickets repeatedly mask driver and rider names, direct contact information, portions of account-identification fields, and some law-enforcement contacts while leaving incident narratives, locations, escalation decisions, account actions, and

[1] Due to a Protective Order, with the Court's permission, Plaintiff will produce the August 14 production under seal.

internal handling visible. **#159961501.pdf** is a closing-status continuation of **#159961501_.pdf**, not a separate incident.

Lyft must serve a verified event-by-event response identifying the systems and date ranges searched, produce responsive nonprivileged records, and log privileged material. If Lyft answers an interrogatory through produced records, it must identify those records.

**C. Lyft's Late, Redacted Zendesk Incident Report Production Forecloses Dismissal by Proving Lyft's Actual Knowledge of Lyft Driver Blagoue's Timely Reporting Wilson's Peggy Court Carjacking Directly to Lyft, in Light of Eight Contemporaneous St. Louis Lyft Carjackings, including Two Lyft Driver Fatalities**

In **D.E. 75**, Lyft argued against the Sixth Amended Complaint "that Lyft had no prior knowledge of Wilson's earlier carjackings." **(D.E. 75 at 10 n.5. [(p. 10)])**. Court-ordered discovery later revealed a materially different—and previously undisclosed—record. At the July 22 conference, Lyft admitted that it had produced nothing responsive to RFP No. 38 but had located a file reflecting Blagoue's post-carjacking report. **(D.E. 113, July 22 Tr. pp. 52:11–53:4)**. On July 23, Lyft confirmed that the file was a searchable Zendesk ticket documenting Blagoue's report that his cellphone had been stolen during the carjacking while he was driving through Uber. **(D.E. 114, July 23 Tr. pp. 19:1–20:25).**

The later-produced ticket, #176818835.pdf, confirms that before Newman's death Lyft possessed a report of a carjacking at 1231 Peggy Court by two men using the rider-request name "Robert"—facts directly relevant to Lyft's notice and materially inconsistent with the factual premise of its prior no-notice argument.

The Court-ordered production further establishes an escalating record of **actual notice** of St. Louis driver violence before Newman's death**. First, #171960261.pdf proves Lyft received and internally investigated a September 27, 2020 St. Louis report involving a Lyft driver, a rider, two shooting fatalities, and what Lyft's own notes described as a possible

"carjacking or robbery attempt." That report establishes actual notice of fatal, rider-associated violence against a St. Louis Lyft driver. Second, #172974930.pdf, #173384276.pdf, and #174009233.pdf; establish Lyft's actual notice of additional armed St. Louis-area rider-on-driver carjackings, including firearms, stolen vehicles and phones, police investigations, rider-account deactivations, Trust & Safety escalation, and claims handling. These were not abstract crime statistics; they were **Lyft's own operational incident files**.

Most directly, #176818835.pdf conclusively proves Lyft possessed pre-Newman notice evidence concerning the Blagoue carjacking. On March 26, 2021—three weeks before Newman's death—Blagoue, under some driver duty to Lyft, reported to Lyft, that two men using the rider-request name "Robert" had carjacked him at 1231 Peggy Court, stolen his vehicle and telephone, and generated police report. Thus, Lyft had actual notice of a carjacking reported by an active Lyft driver at the same Peggy Court location and involving the same alias later alleged in connection with Newman's killer. The ticket does not alone prove that Lyft then knew "Robert" was Wilson, but it conclusively establishes that Lyft possessed the precise pre-incident facts from which that identity and account linkage must be tested.

That distinction makes Lyft's redactions outcome-determinative. Across the similar-incident reports, Lyft disclosed locations, violent narratives, internal escalation, account actions, and police involvement while masking rider identities, contact information, and account-linkage fields. Those **selective redactions** prevent Plaintiff from determining whether Lyft connected "Robert," Wilson, the stolen telephone, Peggy Court, or related rider accounts. They also permit Lyft to invoke a categorical no-notice position while withholding the evidence that could confirm or refute it. The legally proper inference is not that every redacted rider was Wilson; it is that Lyft cannot benefit from uncertainty created by its own unexplained withholding of

Court-ordered, nonprivileged evidence. Lyft merely removing the redaction at this juncture does not cure Lyft's discovery conduct caused cognizable prejudice against the Plaintiff. The lack-of-notice and causation dismissals are still being litigated, discovery have been vacated, dispositive motion deadlines have been vacated, trial deadlines have been vacated and Lyft has continued to make the illusory promises of compliance with discovery.

Lyft should be denied dismissal because its no-notice argument asks the Court to draw factual inferences against Plaintiff while Lyft withholds the very records necessary to test that position. At the Rule 12 stage, the Court must accept Plaintiff's notice allegations as true and draw reasonable inferences in her favor. The later-produced Zendesk records reinforce those allegations: before Newman's death, Lyft possessed reports of materially similar St. Louis violence, including Blagoue's report of a carjacking at 1231 Peggy Court by two men using the rider-request name "Robert." Lyft's redactions prevent Plaintiff from determining whether Lyft linked that report to Wilson or associated accounts. The Court should deny dismissal, compel unredacted production, and preclude Lyft from asserting lack of notice until it completely complies with the Court's discovery instructions.

Accordingly, sanctions are warranted under Rules 37(a) and 37(b), Rule 26(c), and the Court's inherent authority. The Court should: (1) require reproduction of #171960261.pdf, #172974930.pdf, #173384276.pdf, #174009233.pdf, #176818835.pdf, and the remaining identified Zendesk tickets without redactions; (2) require a sworn explanation of the prior omission, searches, and account-linkage inquiry; (3) compel the related Zendesk, Trust & Safety, routing, escalation, law-enforcement, and investigation records; and (4) preclude Lyft from relying on a categorical no-notice assertion until it completes that production. If Lyft fails to comply, the Court may then consider an adverse inference or other escalating relief under Rule 37(b)(2)(A).

**D. Lyft's Privacy Position does not Justify Unilateral Substantive Redactions.**

The Court questioned what rule permitted Lyft to redact produced discovery for confidentiality, stated that protective orders address those concerns, and expressed suspicion of the redactions. It directed conferral and a joint motion if unresolved. **(D.E. 113, July 22 Tr. pp. 35:4–37:13)**.

The Court reserved decision, not approval. Any suggestion otherwise mischaracterizes its instruction. Plaintiff now seeks the ruling the Court invited after conferral.

Confidentiality does not create privilege. In Dinosaur Merch. Bank Ltd. v. Bancservices Int'l LLC, the court found a protective order sufficient, compelled relevant nonparty identities, and required reproduction without confidentiality redactions. Dinosaur Merch. Bank Ltd. v. Bancservices Int'l LLC, No. 1:19 CV 84 ACL, 2021 WL 918189, at *1 (E.D. Mo. Mar. 10, 2021). Chairez v. AW Distrib., Inc. likewise explains that a producing party must object or seek protection rather than unilaterally redact responsive material; disputed redactions may be addressed through Bates-specific explanations and in-camera review. Chairez v. AW Distrib., Inc., No. 20-CV-1473 (NEB/JFD), 2023 WL 2071375, at *2 (D. Minn. Feb. 17, 2023).

Courts also preserve substantive discovery through tailored safeguards. In re Nat'l Hockey League Players' Concussion Inj. Litig. ordered highly sensitive third-party information produced under a protective order with de-identification and restricted use. In re Nat'l Hockey League Players' Concussion Inj. Litig., 120 F. Supp. 3d 942 (D. Minn. 2015). B.S. by & through Smith v. Indep. Sch. Dist. No. 623 required substantive third-party incident reports relevant to institutional notice while protecting unnecessary personal identifiers. B.S. by & through Smith v. Indep. Sch. Dist. No. 623, No. 20-CV-2369 (DWF/TNL), 2021 WL 4273017, at *3 (D. Minn. Sept. 21, 2021).

Klein v. Affiliated Grp., Inc. does not assist Lyft. It involved potentially thousands of nonparty medical-debt records with marginal investigative value and less burdensome alternatives. Klein v. Affiliated Grp., Inc., No. 18-CV-949 DWF/ECW, 2019 WL 1307884, at *1 (D. Minn. Mar. 22, 2019). Here, the Court already limited discovery by geography, period, and incident type; identities and incident details are necessary to locate witnesses, test notice, and audit completeness.

Plaintiff proposes attorneys'-eyes-only treatment, litigation-only use, consistent coded identities where feasible, counsel-routed initial contact, redaction of Social Security numbers, financial-account numbers, dates of birth, credentials, and other unnecessary identifiers, and in-camera review of any remaining dispute. These protections answer Lyft's generalized privacy concern without destroying the ordered discovery's utility. **The August 18, 2026 confirms** the recurring selective redactions report by report and confirms that Lyft disclosed operational narratives, escalation decisions, account actions, and law-enforcement outreach while masking witness and account-linkage fields not protected by privilege.

**E. Fees and Corrective relief are warranted.**

Lyft's failure has prevented witness identification, impaired deposition and expert preparation, and forced Plaintiff to spend time auditing incomplete production and pursuing information uniquely within Lyft's control. The Eastern District of Missouri recognizes that forcing a party to "hound" an opponent for ordered discovery is cognizable prejudice. A.O.A. v. Rennert, No. 4:11 CV 44 CDP, 2018 WL 1251827, at *2 (E.D. Mo. Mar. 12, 2018).

*A.O.A.* awarded fees for litigating sanctions and investigating noncompliance and ordered continued recovery efforts. Howland v. Smith supports request-specific correction by a firm deadline, including verified answers and privilege logs. *See also* Howland v. Smith, No. 2:18-CV-

18 NAB, 2020 WL 4890080, at *1 (E.D. Mo. Aug. 20, 2020). Those measured remedies fit this record.

Plaintiff presently seeks fees and corrective compliance. Ramshaw v. Ehret, and Monsanto Co. v. Hargrove, support escalating sanctions only if warnings and lesser measures fail. Ramshaw v. Ehret, No. 4:20-CV-00359-NCC, 2023 WL 6214875, at *3 (E.D. Mo. Sept. 25, 2023); Monsanto Co. v. Hargrove, No. 4:09-CV-1628 CEJ, 2011 WL 5330674, at *4 (E.D. Mo. Nov. 7, 2011), judgment reinstated, No. 4:09-CV-01628-SRC, 2021 WL 3930502 (E.D. Mo. Sept. 2, 2021).

## V. REQUESTED RELIEF

Plaintiff requests an Order:

1. Finding that Lyft failed to provide the Interrogatory No. 3 evaluation and position by July 29, 2026;

2. Requiring, within **four calendar days**, a verified supplemental answer stating whether Lyft can identify responsive trips and drivers, the inquiry performed, the results, responsive identifying information, and any specific objection;

3. Requiring a sworn corporate declaration if Lyft claims the information cannot be obtained;

4. Requiring, within **four calendar days**, verified event-specific searches and unredacted production for the Torres, Hayes, Blagoue, and other responsive Missouri/Illinois Zendesk and Trust & Safety records;

5. Requiring a verified Interrogatory No. 9 supplement identifying responsive incidents and drivers and the Bates numbers relied upon;

6. Resolving the redaction dispute by requiring reproduction of **#159961501_.pdf, #159961501.pdf, #171960261.pdf, #172974930.pdf, #173384276.pdf, #174009233.pdf,**

**#176418033.pdf, #176818835.pdf, and #176923469.pdf** under attorneys'-eyes-only, litigation-use-only protection; permitting only unnecessary-identifier redactions or consistent coding; requiring names and counsel-routed contact for material witnesses; and requiring Bates-specific explanations and in-camera review for any remaining redaction;

7. Requiring an incident-level table listing the date, location, incident type, driver, rider or alias, report or ticket number, Bates range, withheld material, and basis;

8. Requiring native production where previously ordered and sworn compliance certifications by Lyft's counsel and a knowledgeable corporate representative;

9. Awarding the expenses and attorney's fees caused by the noncompliance, with Plaintiff's supported application due fourteen days after the ruling;

10. Requiring Defendant discovery compliance by date certain;

11. Extending affected deadlines; and

12. Warning that continued noncompliance may result in monetary sanctions under Rule 37(b)(2)(A).

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests targeted corrective relief, fees, and an express warning of escalating sanctions.

Respectfully submitted,
**THE WITHERSPOON LAW GROUP**
/s/*Roland Witherspoon*
Nuru Witherspoon, Esq.
Missouri Bar No. 66812
Roland Witherspoon, Esq.
(*Pro Hac Vice* Admission)
Email: witherspoon@twlglawyers.com
7290 Crosswater Ave.
Tyler, Texas 75703
Ph: (903) 597-2500 | Fax: (903) 597-450
**E-service only:** litigation@withlaw.com
***Attorneys for Plaintiff***

**CERTIFICATE OF CONFERENCE**

Pursuant to E.D. Mo. Local Rule 3.04(A), I certify that on **August 18, 2026** at **11:30am** I conferred **by telephone** with **Lyft's Counsel** concerning the specific relief requested in this motion. The conference addressed **Interrogatory No. 3, Similar-Incident Identification, Redactions, Production, Uncertainty Corrective Production, Fees, And Proposed Deadlines**. Despite sincere efforts, the parties were unable to resolve **Supplemental Discovery and Deposition Dates.**

*/s/Roland Witherspoon*________
Roland Witherspoon

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was forwarded to the following counsel of record, pursuant to the Texas Rules of Civil Procedure, on this 19th day of August, 2026:

Matthew K. Crane, Esq.
James F. Bennett, Esq.
DOWD BENNETT LLP
7676 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
mcrane@dowdbennett.com
***Attorneys for Defendant***

*/s/Roland Witherspoon*________
Roland Witherspoon