**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| LISA NEWMAN, individually, and as the wrongful death beneficiary of ELIJAH NEWMAN, deceased,<br><br>*Plaintiff,*<br><br>v.<br><br>LYFT, INC.,<br><br>*Defendant.* | No. 4:23-cv-853-MAL |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Lyft, Inc.'s motion to dismiss for failure to state a claim Plaintiff Lisa Newman's Sixth Amended Complaint, which she filed on behalf of her deceased husband Elijah Newman. (Doc. 74). For the following reasons, Lyft's motion is **GRANTED with respect to Count 6** and **DENIED with respect to all other Counts**.

**Background**

This is what Lisa Newman alleges in her Sixth Amended Complaint (Doc. 72).[1] On April 15, 2021, Elijah Newman was driving for Lyft when Lyft matched Mr. Newman with a rider with an account under the name "Robert Henderson." (*Id.* ¶ 9). The rider was actually Torian Wilson, a 17-year-old who had carjacked another Lyft driver at virtually the same location just weeks earlier. (*Id.* ¶¶ 9, 31–33). Torian Wilson murdered Mr. Newman. (*Id.* ¶ 9).

[1] In determining whether a complaint states a claim for relief, "the court must take the plaintiff's factual allegations as true." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). So, for the purposes of deciding Lyft's motion to dismiss, the Court recounts the allegations in Newman's Sixth Amended Complaint, taking them as true (for now).

Lyft's data systems had the information to identify Wilson as a dangerous criminal: his email was tied to rider fraud and other carjackings; his payment method was anonymous (which often correlates to criminal behavior in connection with the Lyft App); and his account history placed him in the vicinity of other, similar crimes that were committed. (*Id.* ¶¶ 18, 31–34).

Lyft collects and maintains this data as an integral part of its business, monitoring rider and driver behavior. In operating its rideshare platform, Lyft keeps records of its riders' information and tracks their activity, and it verifies its drivers' identities and maintains information about their vehicles, license, and even criminal history. (*See id.* ¶¶ 12, 15–16, 20–22, 32–34). Lyft also collects publicly available crime data and police activity so it can analyze and act on that information. (*Id.* ¶¶ 20–21, 34).

Despite possessing this information, Lyft did not deactivate Wilson's account, designate it as suspicious, warn Mr. Newman that the pickup location had recently been the site of a violent attack, inform him that the requesting rider had recently carjacked another Lyft driver at the same location, or provide any safety-related information about the area or the rider. (*Id.* ¶¶ 22, 30–32, 35). Instead, Lyft gave Mr. Newman only fifteen seconds to decide whether to accept the ride. (*Id.* ¶ 36). When Mr. Newman accepted the ride, Lyft directed him, unaware and unprotected, to the place Wilson had carjacked another Lyft driver weeks before. (*Id.* ¶¶ 26–31).

Lyft has expressly promoted the mutual safety of both driver and rider, touting the idea that Lyft "shares the ride" with them. (*Id.* ¶ 14). Lyft has said that it wants "every ride to be safe for everyone." (*Id.*) (referencing Lyft's website).

Mr. Newman's wife now sues Lyft for (1) negligence, (2) negligent undertaking, (3) strict liability for defective product design, (4) negligent product design, (5) failure to warn, and (6) negligent training. (*Id.* at 12–15 (Count 1), 16–17 (Count 2), 17–20 (Count 3), 20–25 (Count 4), 25 (Count 5), 26 (Count 6)).[2] Lyft moves to dismiss all counts. (Doc. 74).

---

[2] All page numbers referenced in this Order refer to the page number of the docket entry itself as identified by the file stamp header.

## Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." On a Rule 12(b)(6) motion, the Court takes the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Court should not parse the complaint piece by piece, but rather consider the complaint as a whole. *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 795 (8th Cir. 2021).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility is not a "probability requirement," and it asks only for "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## Applicable Law

Because this action is brought in this Court pursuant to its diversity jurisdiction under 28 U.S.C. § 1332, (Doc. 72 ¶ 5), Missouri law applies. *See Olmsted Med. Ctr. v. Cont'l Cas. Co.*, 65 F.4th 1005, 1008 (8th Cir. 2023) ("[F]ederal court[s] sitting in diversity … apply the substantive law of the forum state.").[3] When a federal court is charged with applying Missouri law, it "look[s] to relevant state precedent, analogous decisions, considered dicta, and any other reliable data to determine how the Supreme Court of [Missouri] would construe [Missouri] law." *Salier v. Walmart, Inc.*, 76 F.4th 796, 801 (8th Cir. 2023) (quoting *Ashley Cnty. Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009)). "If the Missouri Supreme Court has not spoken on an issue, [the Court] may consider opinions from the Missouri Court of Appeals as particularly relevant and must follow them when those opinions provide the best

[3] The parties also do not dispute that Missouri law applies and cite to Missouri law throughout their briefing on the motion to dismiss. *See generally* (Docs. 75, 77, 82).

evidence of Missouri law." *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)) (internal quotation marks omitted).

**Analysis**

Lyft moves to dismiss Plaintiff's claims on several grounds: (1) lack of causation for the products liability claims,[4] (2) lack of proximate causation due to an intervening criminal act,[5] (3) lack of duty,[6] (4) failure to allege key elements,[7] and (5) failure to plead a recognized cause of action.[8] The Court will address each argument one by one.

**I. Products Liability Causation – Counts 3, 4, and 5**

Lyft argues that Counts, 3, 4, and 5 (strict liability defective design of the Lyft software, negligent design of the Lyft App, and failure to warn, respectively) must be dismissed because the Operative Complaint "does not show that the Lyft App itself physically harmed Mr. Newman." (Doc. 75 at 7). Lyft argues that an essential element of any products liability claim is that the injuries be caused "by the product" and that the "physical harm" must be a "direct result" of the product's defective condition. *Id.* The Court disagrees.

**A. Count 3 – strict liability defective design of the Lyft software**

The Court addresses Count 3 first. The elements for strict liability design defect claims are codified at Mo. Rev. Stat. § 537.760:

> 1. The defendant…transferred a product in the course of his business; and
> 2. The product was used in a manner reasonably anticipated; and
> 3. Either or both of the following:
>    a. The product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and the plaintiff was damaged as a

---

4 (Doc. 75 at 7-8).
5 (Doc. 75 at 3-7).
6 (Doc 75 at 8–14).
7 (Doc. 75 at 14).
8 (Doc. 75 at 14–15).

> direct result of such defective condition as existed when the product was sold; or
>
> b. The product was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and the plaintiff was damaged as a direct result of the product being sold without an adequate warning.

Count 3 is a § 537.760.3(a) claim because it addresses defective design, not failure to warn. (Doc. 72 at 17). Lyft argues that plaintiff was not "damaged as a direct result" of any "defective condition" belonging to the Lyft App.

The Court disagrees because the phrase "direct result" in § 537.760.3(a) means "proximate cause," and proximate causation is present here. The Missouri Supreme Court's interpretation of § 537.600 sheds light on how best to interpret § 537.760.3(a). *See State ex rel. Mo. Highway & Transp. Comm'n v. Dierker*, 961 S.W.2d 58, 60 (Mo. 1998). Both § 537.760 and § 537.600 belong within the same chapter of the Missouri Revised Statutes, titled "Torts and Actions for Damages." Mo. Rev. Stat. §§ 537.010–.1250. The two statutory sections also contain parallel language. Section 537.600.1(2) refers to an "injury [that] directly resulted from the dangerous condition," while § 537.760 refers to "damage[] as a direct result of such defective condition." Because both sections belong to the same chapter of the Revised Statutes, the natural inference is that the phrase "direct result" has the same meaning in both sections. *State v. League of Women Voters in Missouri*, 730 S.W.3d 591, 603 (Mo. 2026) (referencing the "presumption that words used several times in the same chapter have the same definition").

In *Dierker*, the Missouri Supreme Court determined that the phrase "directly resulted from" in § 537.600.1(2) means proximate cause. 961 S.W.2d at 60. The phrase "direct result" in § 537.760.3(a) should be given the same meaning. Therefore, the Court finds that the phrase "direct result" in § 537.760.3(a) means "proximate cause."

This result makes sense even though § 537.760.3(a) is a strict products liability statute. In general, proximate cause is an element of strict products liability claims. *See Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 381 (Mo. 1986) ("Proving

proximate cause in a strict tort liability case is a fundamental burden that must be met."). Thus, a statute codifying strict products liability would be expected to include a proximate cause limitation.

To apply § 537.760.3(a) in this case, the Court must determine whether the allegations in the Operative Complaint demonstrate that the Lyft App's defective design (assuming there was one) proximately caused Mr. Newman's death. The answer is yes. "Proximate cause inquires into the scope of foreseeable risk created by the defendant's acts or omissions." *Nail v. Husch Blackwell Sanders, LLP*, 436 S.W.3d 556, 563 (Mo. 2014). Here, Lyft's alleged omission was designing an app that connected drivers with riders without taking sufficient steps to protect drivers from dangerous riders who might injure or kill them. (Doc. 72 ¶ 21). There is proximate cause here because—if the Lyft App was in fact defective in this way—a driver dying at the hands of a dangerous rider is precisely the risk that made the App's design dangerous. Therefore, Mr. Newman's death at the hands of Mr. Wilson fell within the scope of foreseeable risk created by the Lyft App's defective design. Section 537.760.3(a)'s proximate cause requirement is satisfied.

**B. Counts 4 and 5 – Negligent Design of the Lyft App and Negligent Failure to Warn**

Next the Court considers whether to dismiss Counts 4 and 5—negligent design of the Lyft App and Negligent Failure to Warn, respectively. (Doc. 72 at 20, 25). Lyft argues that both claims should be dismissed because any injury was not the "direct result" of the defective design. (Doc. 75 at 7–8). For the reasons stated below, the Court disagrees.

The Court addresses Counts 4 and 5 because both require that a plaintiff experience damage as a "direct result" of something. A negligent design claim like the one in Count 4 requires the following elements: (1) the defendant designed the product; (2) the product was defective or hazardous; (3) the defendant failed to use ordinary care to design the product to be reasonably safe; and (4) as a direct result of such failure, the plaintiff sustained damage. *Johnson v. Auto Handling Corp.*, 523 S.W.3d 452, 465 (Mo. 2017) (citing Missouri Approved (Jury) Instruction 25.09).

Count 5's negligent failure to warn claim is similar: (1) a defendant manufactured or designed a product; (2) the product was defective or hazardous; (3) the defendant failed to use ordinary care to adequately warn of the risk of harm from the alleged defect or hazard in the product; and (4) as a direct result of such failure, the plaintiff sustained damage. *Johnson*, 523 S.W.3d at 465 (citing MAI 25.09); *see also Moore v. Ford Motor Co.*, 332 S.W.3d 749, 764 (Mo. 2011) ("[T]he defendant failed to use ordinary care to warn of the risk of harm from the alleged defect or hazard" and "as a direct result of the defendant's failure to adequately warn, the plaintiff sustained damage.").

It would be strange for the Court to import a separate meaning to "direct result" in Counts 4 and 5 than is used in Count 3. The Court therefore finds the *Dierker* court's equivalence of "direct result" and "proximate cause" persuasive and applies that meaning to both Counts 4 and 5. 961 S.W.2d at 60. This result aligns with the Missouri Supreme Court's treatment of proximate cause in failure to warn claims. In *Moore*, the Missouri Supreme Court appears to equate "damages as a direct result" to "proximate cause." 332 S.W.3d at 761–62. Therefore, a proximate causation analysis is in order.

In this case, the Operative Complaint alleges that the Lyft App failed to incorporate adequate data analysis within its application to detect rider fraud, failed to equip the App with sufficient fraud-protection technology, failed to integrate passenger screening technology into the App, failed to incorporate adequate data collection and analysis technology to protect drivers from danger, failed to equip the App with adequate rider verification, told drivers it would ensure the safety of everyone involved but did not, and many other things. (Doc. 72 at 22–25). In other words, the Lyft App's design and implementation failed to warn Mr. Newman of the dangers associated with picking up Mr. Wilson, and if it had Mr. Newman would not have accepted Mr. Wilson as a rider. (*Id.* ¶¶ 66-76).

Proximate cause exists for both Counts 4 and 5. For Count 4, proximate cause is present for the same reasons as Court 3. *See* Part I.A. *supra*. For Count 5, to show proximate causation, "plaintiffs must show that a warning would have altered the

behavior of the individuals involved in the accident." *Moore*, 332 S.W.3d at 762. Lyft claims that Count 5 fails because the Plaintiff cannot say that an adequate warning would have altered his behavior. (Doc. 75 at 14). But Missouri law "aids plaintiffs in proving this second part of causation by presuming that a warning will be heeded." *Moore*, 332 S.W.3d at 762. This presumption "assumes that a reasonable person will act appropriately if given adequate information. Thus, a preliminary inquiry before applying the presumption is whether adequate information is available absent a warning." *Id.* And "[i]f there is sufficient evidence from which a jury could find that the plaintiff did not already know the danger, there is a presumption that a warning will be heeded." *Id.* (quotations omitted). Here, it is a fair inference from Plaintiff's allegations that Mr. Newman would have declined Mr. Wilson's ride request if the Lyft App had warned Mr. Newman of the previous carjacking by Mr. Wilson or of the danger of the area where Mr. Newman was picking up Mr. Wilson. Doc. 72 at ¶¶ 31–34, 66–76. Further, nothing in the Operative Complaint suggests that Mr. Newman had prior knowledge of Mr. Wilson's previous carjacking. *See generally* Doc. 72. Thus, Mr. Newman had no reason to suspect that Mr. Wilson would act violently. Accordingly, the Court finds that Mr. Newman is entitled to a presumption that he would have heeded a warning. *Moore*, 332 S.W.3d at 762. Proximate cause exists for Count 5 because Mr. Newman's injury is the kind of injury we would expect from this kind of failure to warn. *See, e.g.*, *Moore*, 332 S.W.3d at 762–64 (applying the presumption and finding proximate cause for failure to warn of seat defects in a vehicle).

The Court declines to dismiss Courts 4 and 5.

## II. Proximate Cause for Counts 1 and 2

Next, we address Lyft's argument that Counts 1 and 2 should be dismissed because the Operative Complaint shows that Lyft's conduct was not the proximate cause of Mr. Newman's death.[9] (Doc. 75 at 3–7). The Court disagrees.

---

[9] Lyft also argues that Courts 3, 4, and 5 should be dismissed for lack of proximate cause, (Doc. 75 at 3–7), but having addressed those Counts in Part I *supra*, the Court addresses only the remaining Counts.

**A.**

Proximate cause is an element of all Plaintiff's claims. *See, e.g.*, *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. 2018) (negligence elements); (Doc. 72 at 12, 16) (showing Counts 1 and 2). Thus, the Operative Complaint must adequately allege proximate cause to survive a motion to dismiss.

Under Missouri law, "[o]nce actual causation has been established, the issue becomes one of legal cause—also known as proximate cause—that is, whether the defendant should be held liable because the harm is the ***reasonable and probable consequence*** of the defendant's conduct." *D.J. by & Through R.J. v. First Student, Inc.*, 707 S.W.3d 581, 586 (Mo. 2025) (emphasis added). In other words, the question is whether the injury was within "'the scope of foreseeable risk created by the defendant's act or omission.'" *Id.* (quoting *Nail*, 436 S.W.3d at 563). "To the extent the [injuries] are surprising, unexpected, or freakish, they may not be the natural and probable consequences of a defendant's actions." *Dierker*, 961 S.W.2d at; *see also D.J.*, 707 S.W.3d at 588.

Here, the allegations in the Operative Complaint—assumed true for the purposes of a motion to dismiss—support the reasonable inference that Mr. Newman's death was a reasonable and probable consequence of Lyft's conduct. Plaintiff asserts a direct and foreseeable chain of events: Lyft (1) failed to identify and screen out Wilson's fraudulent account, (2) failed to warn drivers about Wilson, and (3) failed to prevent Wilson from summoning Mr. Newman to the very same location where Lyft knew that Wilson had previously committed the same crime that killed Mr. Newman. (Doc. 72 ¶¶ 26–36). Unlike the bus driver in *D.J.*—who had no reason to believe a driver would break the law and try to pass the school bus while it was dropping off children—Lyft had reason to believe that the same Lyft passenger who carjacked another rideshare driver before would carjack another rideshare driver again. *Compare D.J.*, 707 S.W.3d at 587–88. These allegations support a reasonable inference that Lyft's negligent conduct foreseeably contributed to Mr. Newman's death.

**B.**

Lyft disagrees, arguing that Wilson's actions were an intervening cause that shields Lyft from liability for Mr. Newman's death. (Doc. 75 at 3–4). Not so.

"When," as here, the Court analyzes negligence claims and "the acts of two or more persons combine to injure a person, 'there is a question as to whether the initial act of negligence was the proximate cause of the injury or whether there was an efficient, intervening cause.'" *DJ. by and Through R.J. v. First Student Inc.*, 707 S.W.3d 581, 587 (Mo. 2025) (quoting *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. 1990)). An intervening cause that breaks proximate causation is a superseding cause. *See id.* at 586. In deciding whether an intervening act amounts to a superseding cause, "each case must be decided on its own facts, and it is seldom that one decision controls another." *Id.* at 587.

Here, Lyft has not shown that Wilson's acts were the superseding cause of Mr. Newman's death as a matter of law. Lyft argues that Mr. Newman's shooting was the type of "surprising, unexpected, or freakish" act that cuts off proximate causation under Missouri law. *Dierker*, 961 S.W.2d at 61; (Doc. 75 at 5–6). Not so.

True, courts have said that "[t]o the extent the damages are surprising, unexpected, or freakish, they may not be the natural and probable consequences of a defendant's actions." *Dierker*, 961 S.W.2d at 61. But the facts here do not support such a conclusion. The allegations in the Operative Complaint show Lyft had reason to know that Wilson had already carjacked another rideshare driver before, yet it matched Mr. Newman with him anyway. *See supra* Part II.A. Under those circumstances, Wilson carjacking another rideshare driver—and that carjacking resulting in the rideshare driver's death—is an unsurprising, reasonably expected, and ordinary consequence of Lyft's actions.

Lyft's primary authority on this point does not change the Court's conclusion. In *D.J.*, 707 S.W.3d 581, the Missouri Supreme Court reaffirmed that a defendant is relieved from liability only if the intervening act is determined to be the sole proximate cause of the plaintiff's injury. *Id.* at 587. In *D.J.*, the Missouri Supreme Court found that a driver's various traffic law violations, without evidence of similar

prior violations, was sufficiently "unexpected" to constitute an intervening cause that broke the chain of causation. *Id.* at 587–88. *D.J.*'s situation is wholly inapposite to the situation in this case. On the facts alleged in the Operative Complaint, Wilson's carjacking and shooting of Mr. Newman using a fraudulent account on Lyft's App was foreseeable—especially to Lyft, which allegedly knew Wilson previously committed the same crime against another rideshare driver at the exact same location. *See* (Doc. 72 at 7–8). Thus, *D.J.* does not support Lyft's position that Wilson's criminal attack was an intervening cause sufficient to break the chain of causation from its own conduct to Mr. Newman's death.

Lyft's argument that its alleged conduct is "highly attenuated from Mr. Newman's point of injury," (Doc. 75 at 6), is equally unpersuasive. Lyft allegedly brought together Mr. Newman and a known carjacker. (Doc. 72 ¶ 22). Unsurprisingly, the known carjacker carjacked Mr. Newman, causing his death. (Doc. 72 ¶ 9). There is nothing attenuated about that short chain of events.

The same goes for Lyft's public policy argument. Lyft says it is subject to extensive statutory obligations that cover driver screening and prohibit using location data to exclude areas from service. (Doc. 75 at 7). But it is unclear how those obligations amount to Lyft not being the proximate cause of Mr. Newman's death. Thus, the Court declines to dismiss Counts I or II for lack of proximate cause.

## III. Lyft's Duty to Protect Against the Criminal Attack

Lyft then moves to dismiss Plaintiff's general negligence and negligent undertaking claims—Counts I and II—because, Lyft argues, Lyft owed no common law duty to protect Mr. Newman from Wilson's criminal attack. (Doc. 75 at 8). Therefore, Lyft claims it cannot be held liable for Mr. Newman's death because it was brought about by Wilson's carjacking. *Id.* True, under Missouri law, a "duty to protect against the criminal acts of third parties is generally not recognized because such activities are rarely foreseeable." *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. 2018). But this is not a categorical rule against a duty to protect against criminal acts. "The touchstone for the creation of a duty is foreseeability." *Id.* In fact, in Missouri, a property owner may be liable for the criminal acts of

another known to be on the property owner's property when he has knowledge or reason to know that they were likely to be present. *Harner v. Mercy Hosp. Joplin*, 679 S.W.3d 480, 484 (Mo. 2023) (explaining the known third person exception). Here, Lyft is the property owner because the Lyft App is its personal property. (Doc. 72 ¶ 75). Wilson actively used the Lyft App, and so was on Lyft's personal property. (*Id.* ¶ 32). And as discussed *supra*, it was foreseeable to Lyft that Wilson was dangerous and could carjack another driver. Therefore, the Court will not dismiss Plaintiff's claims for lack of common law duty.

## IV. Negligent Training

Finally, we address Lyft's argument that Count 6 of the Operative Complaint—"Negligent Training"—should be dismissed because "[t]here is no specific cause of action in Missouri law for negligent training." *Clevenger v. Howard*, 2015 WL 7738372, at *5 (W.D. Mo. Nov. 30, 2015); (Doc. 75 at 14–15). The Court agrees.

To the extent a "negligent training" cause of action exists under Missouri law, it is analyzed as a species of negligent supervision. *See, e.g., Garrett v. Albright*, 2008 WL 795621, at *5 (W.D. Mo. March 21, 2008). And such a claim involves a duty by a "master" to "exercise reasonable care . . . to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them." *Gibson v. Brewer*, 952 S.W.2d 239, 247 (Mo. banc 1997).

Here, Count 6 of the Operative Complaint fails because the Operative Complaint does not allege any harm caused by a "servant" of Lyft. Serial carjacker Wilson was a user of the Lyft App, (Doc. 72 ¶ 31), but he was no "servant" of Lyft. "A servant is a person employed by a master to perform service in his affairs, whose physical conduct in the performance of the service is controlled, or subject to the right of control, by the master." *Blunkall v. Heavy & Specialized Haulers, Inc.*, 398 S.W.3d 534, 541 (Mo. App. 2013) (cleaned up). Nothing in the Operative Complaint shows that Wilson was anything of the sort. *See generally* Doc. 72.

Because "negligent training" claims are not recognized under Missouri law, and because there are no allegations asserting that the harm Plaintiff suffered was caused by a "servant" of Lyft, Count 6 of the Operative Complaint is dismissed.

**Conclusion**

**IT IS HEREBY ORDERED** that Lyft's Motion to Dismiss (Doc. 74) is **GRANTED in part** and **DENIED in part**. Count 6 of Plaintiff's Sixth Amended Complaint is **DISMISSED**. All other relief requested in Lyft's Motion to Dismiss is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Sur Reply, Doc. 84, is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Lyft's Motion for Leave to File Notice of Supplemental Authority, Doc. 87, is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Lyft's Request for Oral Argument on Lyft's Motion to Dismiss Sixth Amended Complaint, Doc. 88, is **DENIED** as moot.

**SO ORDERED,**

This 30th day of September, 2026.

Maria A. Lanahan

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE